IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:04cr95/MCR

ANDRE WILLIAMS
_____

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S AMENDED MOTION FOR COMPASSIONATE RELEASE

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and files this response to Williams's March 19, 2020, amended motion for compassionate release.

## RECENT PROCEEDINGS AND EVENTS

On September 5, 2019, Williams filed a pro se motion for compassionate release and for appointment of a lawyer. (Doc. 78). On September 17, 2019, the government filed a response to Williams's motion. (Doc. 79). Among other things, the government represented that FCI Butner would treat Williams's motion as a request to the warden for compassionate release and would process it as a request. (Doc. 79 - Pgs. 2-3). FCI Butner processed the request, and on September 17, 2019, denied it. A copy of the Warden's letter denying Williams's request is attached to this response (the undersigned inquired of an employee at Butner whether Butner had any additional materials to provide the Court regarding the

1

denial of Williams's request, and the undersigned was informed that Butner did not). On January 30, 2020, the Court appointed the Federal Public Defender to represent Williams. (Doc. 84). On March 19, 2020, the defendant, through his lawyer, filed his pending amended motion for compassionate release. (Doc. 87).

## FACTS

A. <u>Facts regarding Williams's medical condition</u>.

The facts regarding Williams's medical condition are set forth at Doc. 87 - Pg. 27 and in the one-page attachment to this response.

B. <u>Facts regarding the 18 U.S.C. § 3553(a) factors and Williams's danger to the community</u>.

In the present case, in 2004, Williams robbed a bank, wearing a hat and mask, and brandishing a loaded and cocked revolver. (Presentence Investigation Report ("PSR"), ¶ 7; Doc. 37 - Pg. 11). Prior to the present case, Williams was convicted of committing at least six bank robberies. (PSR, ¶¶ 40, 43-46; Doc. 37 - Pg. 11).[1] In all six robberies, Williams was armed with a handgun. (<u>Id</u>.). In one robbery, either Williams or his co-defendant fired their handgun at a victim, and, in another robbery, Williams fired his handgun into the carpet by the bank teller counter. (PSR, ¶¶ 43, 45; Doc. 37 - Pg. 11). Williams committed his armed bank

---

[1] Paragraph 40 of the PSR regards two separate bank robberies. Paragraph 43 of the PSR states that Williams was convicted of four counts of armed bank robbery, but only discusses one robbery.

robbery in the present case 15 months after being released from Louisiana state prison for a robbery sentence (a different robbery that the six bank robberies discussed above). (PSR, ¶¶ 7, 47, 49).

In the present case, Williams was convicted of (1) armed bank robbery, in violation of 18 U.S.C. §§ 2133(a) and (d) and 2, and 18 U.S.C. § 3559(c)(1); (2) using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) possession of a firearm in and affecting interstate commerce by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e)(1). (Doc. 29 - Pg. 1). Because Williams's armed bank robbery in the present case was a serious violent felony, and because he had previously been convicted of two or more serious violent felonies, he faced a mandatory minimum sentence of life imprisonment on Count One. (PSR, ¶ 87; Doc. 37 - Pg. 11). 18 U.S.C. § 3559(c)(1). At sentencing, the Court stated that Williams's numerous armed bank robberies "do cause the Court great concern...." (Doc. 37 - Pg. 9).

## LAW AND ARGUMENT

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.---The court may not modify a term of imprisonment once it has been imposed except that---
>
> (1) in any case---

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that---
>
> (i) extraordinary and compelling reasons warrant such a reduction...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582 (2018).

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Accordingly, the relevant policy statement of the Commission is binding on the Court. United States v. Lynn, 2019 WL 3805349, *1-4 (S.D. Ala. 2019); see also Dillon v. United States, 560 U.S. 817, 827 (2010)(where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).

The Sentencing Guidelines policy statement appears at § 1B1.13 and provides that the Court may grant release if "extraordinary and compelling reasons" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." That is, compassionate release is available where: (1) there are extraordinary and compelling reasons, (2) the § 3553(a) factors warrant it, and (3) the defendant is not a danger to the community. U.S.S.G. § 1B1.13; United States v. Willis, 382 F.Supp.3d 1185, 1187-89 (D.N.M. 2019).

Moreover, with regard to the first requirement, the Sentencing Commission has identified what may constitute "extraordinary and compelling reasons" as follows:

> 1. **Extraordinary and Compelling Reasons.**---Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant.**---
>
> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)   The defendant is---

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.---**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**---
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**---As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1. For its part, consistent with note 1(D), BOP promulgated Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. United States v. Heromin, 2019 WL 2411311, at *2 (M.D. Fla. 2019); White v. United States, 378 F.Supp.3d 784, 785 (W.D. Mo. 2019); see also United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013)("a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case"); United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)(a "party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue").  As the terminology in the statute shows, compassionate release is "rare" and "extraordinary." White, 378 F.Supp.3d at 787; accord Willis, 382 F.Supp.3d at 1188.

Williams is over 65; therefore, for the reasons set forth above, the applicable first issue for the Court is whether Williams is experiencing a serious deterioration in physical and mental health because of the aging process.  If so, then the second issue for the Court is whether the § 3553(a) factors, including whether Williams is a danger to the community, show that the Court should order that Williams be afforded relief.

With regard to the first issue, Williams has the burden of proof.  The government's position is that, based on the record in this case, it would not be

unreasonable for the Court to rule that Williams is experiencing a serious deterioration in physical and mental health because of the aging process.

If the Court reaches the second issue, the government submits that given the § 3553(a) factors, including Williams's danger to the community, Williams has not met his burden of showing he is entitled to relief.[2] The nature and circumstances of the offense in this case were that Williams committed a dangerous felony. (PSR, ¶ 7; Doc. 37 - Pg. 11). Williams's history and characteristics show that he has repeatedly committed dangerous felonies when he is not incarcerated. (PSR, ¶¶ 40, 43-47; Doc. 37 - Pgs. 9, 11). The Court's sentence in this case was needed to reflect the seriousness of the offense, deter others, and incapacitate Williams. (See pgs. 2-3 and record citations contained therein, supra). The Court's life sentence was mandatory because of Williams's violent crime in this case and because of Williams's past, repeated violent crimes. (Id.).

Williams was certainly a danger to the community when the Court sentenced him. To be sure, he is significantly less of a danger now due to his age and health status. That said, when a person is robbed at gunpoint it is an incredibly traumatic

---

[2] Williams argues that the warden's denial of his request for compassionate release did not express a concern that he is a danger to the public. (Doc. 87 - Pg. 22). The warden's letter was cursory and did not disavow a concern that Williams is a danger. In any event, the government's position is that it has concerns that Williams is a danger to the community (as is discussed below).

experience, not to mention a high risk of serious injury or death.  The government submits that the Court needs to balance the impulse for extending compassion to Williams against the need to protect potential victims against the risk of very serious and traumatic crimes.  In this case, the relevant sentencing statute called for a life sentence, and, even if it had not, the Guidelines would have called for a sentence of 444 months to life imprisonment.  (PSR, ¶¶ 87-88).  In other words, Congress and the United States Sentencing Commission struck the balance in favor of incapacitating Williams for life (or 444 months).  Given the facts of this case, and Williams's extensive record of committing violent crimes, the government submits that Williams has not met his burden of showing that the Court should grant him compassionate release.

For the above reasons, the government submits that the Court should deny Williams's motion for compassionate release.

    Respectfully submitted,

    LAWRENCE KEEFE
    United States Attorney

    s/ Robert G. Davies
    Robert G. Davies
    Assistant U.S. Attorney
    Florida Bar No. 704301
    21 East Garden Street, Suite 400
    Pensacola, Florida 32502
    (850) 444-4000

CERTIFICATE OF COMPLIANCE WITH N.D. FLA. LOC. R. 7.1(F)

I hereby certify that this motion complies with the word limitation set forth in N.D. Fla. Loc. R. 7.1(F). This motion contains 2,073 words.

s/ Robert G. Davies
Robert G. Davies
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that a copy of the fore-going has been provided by the Court's cm/ecf system to Gwendolyn Spivey, Assistant Federal Public Defender, 227 N. Bronough St., Ste. 4200, Tallahassee, FL, this the 24th day of March, 2020.

s/ Robert G. Davies
Robert G. Davies
Assistant U.S. Attorney