UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

    v.                                                  Case No.:    3:04cr95/MCR

**ANDRE WILLIAMS**
                                       /

## **ORDER**

This matter is before the Court on Defendant Andre Williams' Amended Motion for Compassionate Release, *see* ECF No. 87, in which he asks the Court to release him from his term of imprisonment under 18 U.S.C. § 3582(c), as amended by Section 603(b) of the First Step Act, in light of his serious deterioration in physical health and the increasing health risks that the current global pandemic of coronavirus (COVID-19) poses to incarcerated persons, particularly those with underlying health conditions.[1]  Having fully considered the applicable law and the parties' arguments, Williams' motion is granted.

---

[1] The First Step Act went into effect on December 21, 2018. *See* FSA of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  Before the passage of the First Step Act, only the Director of the Bureau of Prisons could file a motion for compassionate release.  Section 603(b) of the Act modified 18 U.S.C. § 3582(c)(1)(A), however, with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted). That section now provides that a sentencing court may modify a sentence either on motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all

## I.     Background

Following a bench trial on November 22, 2004, the Court found Williams guilty of one count of armed bank robbery, one count of brandishing a firearm during a crime of violence, and one count of possessing a firearm as a convicted felon. Williams committed these offenses after two or more prior convictions for serious violent felonies; therefore, his armed bank robbery offense carried a mandatory term of life imprisonment. *See* 18 U.S.C. § 3559(c)(1) (2004). Additionally, the offense of possessing a firearm as a felon carried a statutory 15-year mandatory minimum, *see* 18 U.S.C. § 924(e)(1) (2004), and the offense of brandishing a firearm during a crime of violence carried a statutory consecutive 7-year mandatory minimum, *see* 18 U.S.C. § 924(e)(1) (2004).

Williams' Presentence Investigation Report ("PSR") classified him as a Career Offender, resulting in a base offense level of 37. Williams received no adjustment for acceptance of responsibility; therefore, his total offense level also was 37. He had a criminal history category of VI and his resulting Guidelines range was 444 months to life imprisonment, plus a consecutive 84 months. However, due to the statutory mandatory minimum for the armed bank robbery offense, the Guidelines range became life imprisonment, plus a consecutive 84 months. *See*

---

administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 5G1.1(b).  At Williams' sentencing hearing on February 2, 2005, the Court adopted the factual statements and Guidelines applications in the PSR without change.  Williams was ultimately sentenced to life imprisonment for armed bank robbery, 15 years' imprisonment for possessing a firearm as a felon (to be served concurrently with the armed bank robbery sentence), and a consecutive 7 years' imprisonment for brandishing a firearm during a crime of violence.  He has now served more than 15 years in BOP custody.

On March 13, 2020, the President of the United States declared a national emergency due to the evolving threat represented by the outbreak and spread of coronavirus in the United States.  According to the Centers for Disease Control and Prevention ("CDC"), there were 163,539 confirmed and presumptive positive cases of COVID-19 in this country as of March 31, 2020.[2]  Of those, 6,490 cases have been identified in Florida alone.[3]  The World Health Organization ("WHO") has labelled COVID-19 a global pandemic and reports 750,890 cases in 172 countries and at least 36,405 deaths as of March 31, 2020.[4]  As relates to this case, the CDC warns that individuals at "higher risk for severe illness from COVID-19" include

---

[2] *See* CDC, *Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, March 31, 2020, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[3] *See* Florida Department of Health, Division of Disease Control and Health Protection, *Florida's COVID-19 Data and Surveillance Dashboard*, March 31, 2020, https://experience.arcgis.com/experience/96dd742462124fa0b38ddedb9b25e429.

[4] WHO, *Coronavirus disease 2019 (COVID-19) Situation Report – 71*, March 31, 2020, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/situation-reports/.

people aged 65 years and older, people with "serious heart conditions," and people with diabetes and renal disease.⁵

The CDC advises that the coronavirus is "spread mainly from person-to-person . . . [b]etween people who are in close contact with one another . . . [t]hrough respiratory droplets produced when an infected person coughs or sneezes."⁶ The droplets can land in the mouths or noses, or can be inhaled into the lungs, of people who are within about six feet of the infected person.⁷ The coronavirus is highly contagious and those who are infected can spread the virus even if they are asymptomatic.⁸ Additionally, studies have shown that the coronavirus can survive from three hours to three days on various surfaces.⁹ At this time, there is no known treatment, vaccine or cure for COVID-19.¹⁰

---

⁵ *See* CDC, *Coronavirus Disease 2019 (COVID-19), People who are at higher risk for severe illness*, March 26, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

⁶ *See* CDC, *Coronavirus Disease 2019 (COVID-19), How It Spreads*, March 4, 2020, https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html.

⁷ *See id.*

⁸ Marco Cascella et al., *Features, Evaluation and Treatment Coronavirus (COVID-19)*, National Center for Biotechnology Information ("NCBI"), March 20, 2020, https://www.ncbi.nlm.nih.gov/books/NBK554776/#_ncbi_dlg_citbx_NBK554776.

⁹ *See* National Institute of Allergy and Infectious Diseases, *New coronavirus stable for hours on surfaces*, March 17, 2020, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces ("[S]cientists [from the National Institutes of Health, CDC, UCLA and Princeton University] found that [coronavirus] was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.").

¹⁰ CDC, *Coronavirus Fact Sheet*, March 20, 2020, https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf.

According to public health experts, social distancing measures are the most effective way to combat the rapid spread of COVID-19 and prevent illness. "This is especially important for people who are at higher risk of getting very sick."[11] Unfortunately, in the context of institutional confinement, social distancing can be nearly impossible to implement and follow, given the large numbers of inmates held together in crowded, closed facilities.  In light of this reality, courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons "is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."  *See Basank v. Decker*, --- F. Supp. 3d ---, 2020 WL 1481503, at *3 (S.D.N.Y. March 26, 2020); *see also United States v. Harris*, --- F. Supp. 3d ---, 2020 WL 1503444, at ¶ 7 (D.D.C. Mar. 27, 2020); *United States v. Damian Campagna*, Case No. 1:16cr078, 2020 WL 1489829, at *2 (S.D.N.Y. Mar. 27, 2020); *Castillo v. Barr*, Case No. 5:20cv605, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, Case No. 5:18cr20315-3, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); *United States v. Garlock*, Case No. 18cr418, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020).  It is against this backdrop that Williams now seeks compassionate release.

---

[11] CDC, Coronavirus Disease 2019 (COVID-19), *How to Protect Yourself*, March 18, 2020, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

## II.   Discussion

Williams moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and "a reduction [would be] consistent with applicable policy statements issued by the Sentencing Commission."  The policy statements applicable to this case provide, in relevant part, that "extraordinary and compelling reasons exist" where a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).  The Sentencing Commission also directs courts to consider whether the defendant poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," as well as "the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable." *See* U.S.S.G. § 1B1.13.

### A.   Medical Criteria for a Reduction in Sentence

The Court first considers whether Williams meets the medical criteria for a reduction in sentence.  It cannot reasonably be disputed that Williams is presently suffering from serious and progressively worsening medical conditions because of

the aging process.[12] As of March 5, 2020, Williams' diagnoses included severe coronary and peripheral vascular disease, congestive heart failure, left ventricular dysfunction, end-stage renal disease, hyperlipidemia, and prediabetes. *See* Dr. Dennis E. Williams Letter, ECF No. 87. He has already experienced one remote myocardial infarction (*i.e.*, a heart attack) while in BOP custody, requiring him to undergo quadruple coronary bypass surgery as a result. More recently, an automatic implantable cardioverter-defibrillator was placed in his chest to continuously monitor his heart rhythm and deliver electric pulses to restore normal heart rhythm, as necessary. Most significantly, Williams' cardiovascular and renal conditions compromise his immune system, which, taken with his advanced age, put him at significant risk for even more severe and life threatening illness should he be exposed to COVID-19 while incarcerated. In short, an outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence.

### B.  Length of Time Served

The second criterion for a reduction in sentence requires that the defendant have served at least 10 years or 75 percent of his term of imprisonment, whichever

---

[12] Indeed, the Government concedes that "based on the record in this case, it would not be unreasonable for the Court to rule that Williams is experiencing a serious deterioration in physical and mental health because of the aging process." *See* ECF No. 88 at 7-8.

Case No. 3:04cr95/MCR

is less.  Here, Williams has served more than 15 years in BOP custody; therefore, the second criterion is satisfied.

### C. Dangerousness

The Court next considers whether Williams presents "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." See U.S.S.G. § 1B1.13(2).  Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).

Applying these factors in this case, the Court cannot conclude, as Williams argues, that he poses no risk at all to public safety—based on the nature and circumstances of his offenses, the weight of the evidence introduced at trial, and his lengthy criminal history involving similar offenses.  However, given Williams' age, serious health problems, the substantial amount of time he has already served, and his exemplary prison record, factors which are now a part of his history and characteristics, the Court finds that the risk of him engaging in further criminal conduct is minimal and can be managed through home confinement and the terms of his supervised release.  *See id.* (stating that conditions of release can mitigate danger to the community).  More specifically, Williams will be placed on supervised release for five years, including one year of home confinement with electronic

monitoring, and the standard and special conditions previously imposed will result in substantial oversight by the United States Probation Office. *See* Judgment, ECF No. 29 at 3-5. With appropriate supervision, the Court concludes that Williams will not be "a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2).

### D.     § 3553(a) Factors

The final criterion for a reduction in sentence requires the Court to consider whether a reduction is consistent with the applicable § 3553(a) factors. *See* U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics, the need to provide him with any required medical treatment in the most effective manner, the need for the sentence to reflect the seriousness of the defendant's crimes, the need to avoid unwarranted disparities in sentences between similarly situated individuals, and the related needs to provide adequate deterrence to criminal conduct and to promote respect for the law. *See* 18 U.S.C. § 3553(a).

Here, there can be no doubt that Williams' offenses of conviction—again, armed bank robbery, brandishing a firearm during a crime of violence, and possessing a firearm as a felon—were very serious. The seriousness of those offenses is compounded by the fact that he committed them after six prior convictions for armed bank robbery and three prior convictions for bank robbery, all

of which resulted in lengthy terms of imprisonment that failed to deter him from continuing the same criminal conduct.[13] But those prior offenses occurred more than 40 years ago. And Williams has been in BOP custody since 2004, nearly 16 years. That is a significant sanction. In that time, his prison record has been exemplary. Once released, Williams will be on supervised release for five years, including one year of home confinement, which will serve as continued sanctions and general deterrents. For the reasons already discussed, the Court finds that these additional sanctions will protect the public from the risk of future crimes by Williams.

As to Williams' current history and characteristics, the Court has already found that the severity of his physical conditions weighs in favor of a reduction in sentence. Releasing Williams also will serve the interest of providing him with the most effective medical care. The Eighth Amendment guarantees inmates in BOP custody the right to adequate medical care for a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estell v. Gamble*, 429 U.S. 97, 103-05 (1976). It does not require that the BOP provide optimal medical care or the care of an inmate's choosing. *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991). Here, the record indicates that Williams has received excellent care from the BOP to date. However, a reduction of Williams' sentence will enable him to seek, from the

---

[13] Williams also has prior convictions for theft, vagrancy, possession of a stolen vehicle, illegal gambling, possession of heroin, and simple robbery. *See* PSR at 8-13.

doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the very real threat that COVID-19 poses in the institutional environment.

Finally, Williams has served much of his sentence while seriously ill and in physical discomfort. "This means that his sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2)." *See United States v. McGraw*, Case No. 2:02cr018, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019). On balance, the Court concludes that the applicable § 3553(a) factors support Williams' request for a reduction in sentence.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that extraordinary and compelling reasons warrant a reduction of Williams' sentence, that Williams does not poses a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy statements.

Accordingly:

1. Defendant Andre Williams' Amended Motion for Compassionate Release, ECF No. 87, is **GRANTED**.

2. Williams' sentence of imprisonment is hereby reduced to time served, effective immediately, followed by five years of supervised release, including, as an additional special condition of supervised release, a 12-month period of home confinement with electronic monitoring. All other terms and conditions of supervision that were originally imposed remain unchanged. *See* Judgment, ECF No. 29.

3. The Federal Bureau of Prisons is directed to release Williams to the custody of his wife, Ola Mae Givens, immediately after the United States Probation Office approves his release plan.[14] Williams is responsible for arranging his own transportation to his family's residence in Louisiana and, once released, must proceed directly there.

4. On his release from the custody of the Federal Bureau of Prisons, Williams must begin serving the 12-month term of home confinement with electronic monitoring and the 5-year term of supervised release previously imposed. Williams must report in person to the United States Probation Office within 72 hours of his release.

**SO ORDERED**, on this 1st day of April, 2020

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[14] This approach will expedite Williams' safe return home by assuring that he is not transported in the usual manner by BOP, which would involve a lengthy bus trip with stops at BOP facilities that may not be familiar with, or able to meet, the medical needs that justify Williams' immediate release. That process would be inconsistent with the primary purpose of this decision.